Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Leland H. Belew (SBN 293096)
Paul Laprairie (SBN 312956)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California  94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
leland.belew@andrusanderson.com
paul.laprairie@andrusanderson.com

Clinton A. Krislov (*pro hac vice forthcoming*)
Christopher M. Hack (*pro hac vice forthcoming*)
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1300
Chicago, Illinois  60606
Telephone: (312) 606-0500
Facsimile: (312) 739-1098
clint@krislovlaw.com
chris@krislovlaw.com

*Attorney for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION and VIKING CLIENT SERVICES, INC., d/b/a VIKING BILLING SERVICE,<br><br>Defendants. | No. 3:19-cv-210<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

# CLASS ACTION COMPLAINT

Plaintiff Ronald G. DeNicolo, Jr. ("Plaintiff"), for himself and for all others similarly situated, brings this class action against Defendants The Hertz Corporation ("Hertz") and Viking Client Services, doing business as Viking Billing Service ("Viking"), (collectively "Defendants"), and in support thereof, upon personal knowledge as to himself and upon information and belief as to all other matters, alleges the following:

### I. NATURE OF THE ACTION

1. This is a class action arising from Defendants' unlawful practice of dunning rental-car customers for purported damage to Hertz rental cars for the first time months after the alleged damage occurred. More than three months after returning a rental car—free of any damage—Plaintiff learned of Hertz's damage claim for the first time when he received a bill from Viking, a debt collector, accompanied by an immediate offer to settle the matter for 80 percent of the purported amount due. In the months between the initial Hertz rental and the onset of Viking's collection activities, the car in question has presumably been rented dozens of different times and driven countless miles in myriad locations. By waiting months to initiate collection on the alleged damage, and by improperly conflating the initial invoice with a debt collection notice, Defendants have prevented customers from timely contesting the claims with the original creditor, deprived customers who actually damaged rental cars of insurance coverage, and exponentially increased the likelihood of mistake and fraud. This conduct violates the federal Fair Debt Collection Practices Act and California's Consumers Legal Remedies Act, is a breach of the covenant of good faith and fair dealing and requires a declaratory judgment barring Defendants from attempting to collect rental-car damage debt

where customers are first notified of claims more than 30 days after the date of the alleged damage.

## II. JURISDICTION AND VENUE

2.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Counts I and II are brought under the Fair Debt Collection Practices Act, 15 U.S.C § 1692k(d), and Count V is brought under the Federal Declaratory Judgment Act, 25 U.S.C. § 2201, and pursuant to 28 U.S.C. § 1367 because Counts III-IV are supplemental to the federal claims.

3.  Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.  Further, Defendants reside in this judicial district for purposes of § 1391.  Also, Defendants have used the laws within, and have done substantial business in, this judicial district.

## III. PARTIES

4.  Plaintiff Ronald G. DeNicolo Jr. is a citizen of the State of Illinois and resides in Riverside, Illinois.  On February 8, 2018, he rented a car from Hertz's Thrifty rental facility at San Francisco International Airport.  He returned the car undamaged to the same facility on Feb. 9, 2018.  On May 29, 2018 – 110 days after he returned the car – Plaintiff received a letter from Viking purporting to seek $1,303.70 for damage allegedly done to the vehicle he rented in February.

5.  Defendant The Hertz Corporation is a Delaware corporation headquartered in Estero, Florida.  Defendant operates the Hertz, Dollar and Thrifty car rental brands with approximately 9,700 corporate and franchise locations around the world.  Hertz's registered agent in California is CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California, 90017.

6. Defendant Viking Client Services, Inc., d/b/a Viking Billing Service, is a Minnesota corporation that acts as a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts. Viking holds a valid Illinois debt-collection license issued by the Illinois Department of Financial and Professional Regulation. Viking is Hertz's agent in collecting debts arising from damage to rental cars. Viking's registered agent is located at 7500 Office Ridge Circle #100, Eden Prairie, Minnesota, 55344.

### IV. FACTUAL ALLEGATIONS

7. At 9:54 a.m. on February 8, 2018, Plaintiff rented a Nissan Versa from Hertz's Thrifty rental-car facility at San Francisco International Airport.

8. At 10:08 a.m. on February 9, 2018, Plaintiff returned the car to the Thrifty location at San Francisco International Airport.

9. The car was not damaged while in Plaintiff's possession. Upon returning the car to Thrifty, no one alleged that the car was damaged, or that Plaintiff was responsible for any additional charges beyond the $43.82 he paid for the one-day rental.

10. After returning the car, Plaintiff returned home to Chicago and heard nothing further regarding the rental from either Defendant for more than three months.

11. On or about May 29, 2018, Plaintiff received a letter from "Viking Billing Service" stating, in part, that:

> Viking Billing Service has been assigned a claim by Dollar Thrifty Corp for damages incurred to a vehicle you rented. As authorized agents, we would like to extend an offer to you to resolve your claim balance for 80% of the current amount due.

*See* May 29, 2018 Viking letter, attached hereto as Ex. A. This letter was the first time Plaintiff learned that Hertz was claiming he damaged the car he rented months earlier. In this

letter, Viking did not identify itself as a debt collector; nor did the letter include any FDCPA-required warning language.

12. After receipt of the May 29, 2018 letter, Plaintiff called Thrifty to inquire about the legitimacy of Viking, and to state that he did not damage Thrifty's car. A Thrifty representative confirmed that they had no record of Plaintiff damaging the car, emailed Plaintiff Thrifty's closing rental agreement showing that he had already paid the full amount – $43.82 for a one-day rental – for which he was responsible, and suggested he contact Viking regarding the letter.

13. Shortly thereafter, Plaintiff called Viking, explained he had not damaged the car and that the letter was the first indication of any claim against him by Hertz in the more than three months since the rental. In alleged support of Viking's claim, its representative emailed Plaintiff (i) a letter dated December 17, 2015 stating that Viking had been retained by Hertz as Hertz's agent in recovery of damages to rental vehicles, attached hereto as Ex. B; (ii) Plaintiff's "opening" Hertz rental agreement, attached hereto as Ex. C; (iii) Plaintiff's "closing" rental agreement, attached hereto as Ex. D; (iv) Hertz rental terms and conditions pertaining to rentals within the Republic of Croatia, attached hereto as Ex. E;[1] (v) a Hertz "Vehicle Incident Report" dated, alternatively, February 10, 2018 and February 14, 2018,[2] purporting to detail damage to the vehicle Plaintiff rented and incorrectly noting that "Customer Doesn't Speak English," attached hereto as Ex. F;[3] (vi) a purported estimate dated

---

[1] Plaintiff rented the vehicle in San Francisco and drove it exclusively in San Francisco for one day. He did not rent a car in the Republic of Croatia.

[2] The space on the Vehicle Incident Report marked "Today's Date," states February 10, 2018 – a day after Plaintiff returned the car. *See* Ex. F. However, the report is also twice stamped with the date February 14, 2018 – five days after Plaintiff returned the car. *Id*.

[3] Plaintiff – a native of Naperville, Illinois, graduate of Illinois State University and lifelong resident of the immediate Chicago area – does in fact speak English, exclusively.

February 12, 2018 by "DTAG Rental Operations" to repair damage to a 2016 Nissan Versa for $1,203.70, attached hereto as Ex. G;[4] and (vi) pictures purporting to show damage to a Nissan Versa, attached hereto as Ex. H.

14. On or about June 6, 2018, Plaintiff received a second letter from Viking, again demanding $1,303.70 for the purported damage to Plaintiff's rental car in February 2018. *See* June 6, 2018 letter, attached hereto as Ex. I. This letter – sent to Plaintiff *after* Plaintiff had already proactively responded to Viking's first letter regarding the Hertz claim – now contained standard FDCPA warning language that Viking was a debt collector and that any information obtained from Plaintiff would be used for that purpose. *Id*.

15. On or about July 11, 2018, Plaintiff received a third letter from Viking, again demanding the $1,303.70 for the purported Hertz claim. *See* July 11, 2018 letter, attached hereto as Ex. J. This letter repeated May 29, 2018 letter's offer to settle the matter for 80 percent of the claim amount. *Id*. As with the June 6, 2018 letter, this letter included standard FDCPA warning language. *Id*.

16. On or about August 31, 2018, Plaintiff received a fourth letter from Viking, again demanding $1,303.71 for the purported Hertz claim. *See* August 31, 2018 letter, attached hereto as Ex. K. This time, Viking offered to put Plaintiff on a payment plan. *Id*. This letter included standard FDCPA warning language. *Id*.

17. Viking's practice of collecting damage claims on behalf of rental-car companies for purported damage to rental cars that occurred months earlier is widespread, as documented in a recent Detroit Free Press column:

> How's this one for a summer vacation horror story? Rent a car, return it and then, three or four months later, get a bill for $500 or more for damages.

---

[4] The repair estimate does not indicate whether Hertz actually had the vehicle repaired, or how much, if anything, Hertz paid to have the vehicle repaired.

> Maybe you're being charged for dings that you're convinced weren't there when you turned in the rental car.
>
> It's one potential rip-off to avoid during the summer vacation season. Angry consumers who have found themselves staring at a bill have turned to the Better Business Bureau and others to complain about their billing and collections incidents involving rental cars and damages.
>
> One consumer complained late last year to the BBB saying, 'I rented a car from Budget and returned it on July 5th of (2017), 5 months after returning the car I get a bill from Viking Billing Services stating that I damaged the car and claimed $798.01. I know there was no damage while I had the car.'
>
> Another consumer was upset about a claim for $1,386.68 for damage that the consumer did not believe took place during the rental.
>
> A local consumer told me about renting a car at Thanksgiving from Thrifty and then receiving a bill from Viking Client Services, a collections agency and billing service, in March for about $465 – including roughly $100 for 'loss of use' on the car and a $50 administrative fee. Again, the driver complained that the damage wasn't there when that customer returned the car. The report noted that the 'customer walked away' when the car was dropped off, as allowed, before the office opened because the couple was catching an early flight.
>
> Consumers are often upset with the car rental companies, as well as the billing service, which may send the first notice the customer sees about the charge for the damages.
>
> About 90 complaints were answered or resolved in the past three years involving Viking, including 59 involving billing or collection issues, according to the BBB.

Susan Tompor, *Car rental customers: Watch your mail for this unexpected bill*, Detroit Free Press, June 6, 2018.[5]

18. There have indeed been more than 90 complaints filed with the BBB concerning Viking over the past three years.[6] A review of the BBB filings shows that about half of the

---

[5] *See* https://www.freep.com/story/money/personal-finance/susan-tompor/2018/06/06/rental-car-damages-bill/668517002/ (last visited December 5, 2018).
[6] *See* https://www.bbb.org/us/mn/eden-prairie/profile/billing-services/viking-client-services-llc-0704-20958/complaints (last visited November 29, 2018).

complaints that included details of the underlying transaction specifically note that the complainant received first notice from the Viking of the damage claim more than 30 days after the rental. Many more complaints do not include both the rental return date and the date of the first letter from Viking.

19. Viking's practice of dunning customers of rental-car companies like Hertz more than 30 days after the rental continues to this day. This complaint was received by the BBB on November 2, 2018:

> I rented a VW beetles from Budget in Santa Ana airport, Orange County, California from Aug 31 to Sep 3, 2018. When I returned it around 9:40pm on Sep 3, I inspected it and found NO damage. I handed the rental car over to a Budget staff who is a slim, tall African American gentleman in his mid age. He took mileage, took a look inside the car, then inspected outside of the car. He printed out a receipt after he was done. He did NOT find the car was damaged. Budget Viking sent me a [demand for] payment $322.40 for a damage on this car on Oct 18. When I asked for proof, from all the pictures Viking sent, there is not a single picture shows there is a damage on the car (rear fender?). I returned the car on Sep 3, repair receipt from body shop shows Sep 12. What happened between after 10:30pm Sep 3 to Sep 12? How many miles had the car been driven? I can not get any information from them.

*Id*.

20. And this complaint was received by the BBB on November 1, 2018:

> I had a car rental with Dollar from May 4-7 in Inglewood, CA. I dropped the car off in perfect condition. I started getting letters from Viking in August regarding payment that I owed for damage to the vehicle. I have left Viking voicemails, and they are not getting back to me. I called Dollar directly and they have no record of any damage every being on the car. Therefore, I believe Viking is a SCAM and I no longer want letters from them. They even sent another letter to only pay 80% of the cost, which seems very bizarre. Can you please have them stop mailing me letters for amounts that I owe in money as I never damaged any vehicle.

*Id*.

**V. CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23 *et seq.*, on behalf of the following class (the "Class"):

> All individuals who received letters from Viking asserting claims for purported damage to cars rented from Hertz, Dollar or Thrifty for the first time more than 30 days after the date of the purported damage.

And the following subclasses

> The "Illinois Subclass":
>
> All Illinois residents who received letters from Viking asserting claims for purported damage to cars rented from Hertz, Dollar or Thrifty for the first time more than 30 days after the date of the purported damage. Any individual who previously reached an agreement with Hertz, Dollar or Thrifty regarding the cost and liability of damage, or had those issues determined by law, is excluded from the class.
>
> The "California Subclass":
>
> All individuals who rented a car in California and who received letters from Viking asserting claims for purported damage to cars rented from Hertz, Dollar or Thrifty for the first time more than 30 days after the date of the purported damage.

Excluded from the Class are Defendants; the officers, directors and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendants; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

22. The proposed Class meets all of the Fed. R. Civ. P. 23(a) prerequisites and fits within in the 23(b)(3) category.

23. The 23(a) prerequisites are:

24. **Numerosity**. Upon information and belief, the members of the class are so numerous that their individual joinder would be impracticable.

25. **Commonality**. There are numerous questions of law and fact that are common to Plaintiff and all members of the Class, including, but not limited to the following:

      a)   Whether Viking violated the federal Fair Debt Collection Practices Act;

      b)   Whether Defendants violated California's Consumers Legal Remedies Act;

      c)   whether Defendants breached the covenant of good faith and fair dealing;

      d)   whether Plaintiff is entitled to declaratory judgment;

      e)   whether Plaintiff and Class members are entitled to injunctive relief;

      f)   whether Plaintiff and Class members have suffered damages; and

      g)   whether Plaintiff and Class members are entitled to equitable relief.

26.   **Typicality**. Plaintiff is a member of the Class and Subclasses and has claims that are typical of all members of the Class and Subclasses. Plaintiff's claims and all Class members' claims arise out of the same uniform course of conduct by Defendants and may be remedied under the same legal theories.

27.   **Adequacy**. Plaintiff will fairly and adequately represent the interests of the members of the Class and Subclasses. Plaintiff has no conflicts of interest with, or interests that are any different from, those of the other Class members. Plaintiff has retained competent counsel experienced in consumer class actions of this type and other complex litigation.

28.   This case fits into the Rule 23(b)(3) category:

29.   **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.

30.   **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. Individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the court and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

//

31. **Manageability**. This case is well suited for treatment as a class action and can easily be managed as a class action, because evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

32. Defendants have acted on grounds generally applicable to Plaintiff and Class members by uniformly, unlawfully dunning them. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the class as a whole.

VI.   CAUSES OF ACTION

**COUNT I**
**Violation of the Fair Debt Collection Practices Act**
**15 U.S.C. § 1692f**
**Against Viking On Behalf of Plaintiff and The Class**

33. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

34. Viking is a "debt collector" as that term is defined by 15 U.S.C § 1692(a)(6) and has treated Plaintiff's purported debt as if it were in default.

35. The FDCPA prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

36. It is unfair and unconscionable to begin attempts to collect debt for damage to a rental car many months after the damage purportedly occurred. Here, Plaintiff rented a car from Hertz on February 8, 2018 and returned it undamaged the morning of February 9, 2018. Hertz completed an incident report (purportedly on February 10, 2018) alleging damage to the car Plaintiff had rented and ascribing blame to Plaintiff. Hertz allegedly obtained a body-shop

estimate (purportedly on February 12, 2018) to repair the purported damage. However, it was not until May 29, 2018 that Plaintiff was first informed that he was the subject of a damage claim stemming from the rental more than three months earlier.

37. Moreover, by having the initial dunning letter be the first notification to Plaintiff of the claim, Viking – undisputedly a professional debt collector – was nevertheless able to avoid including FDCPA warning language on that letter because it could subsequently argue that the debt was not in default at that point as Plaintiff had not yet learned of any claim from either Hertz or Viking. It was only after Plaintiff received the first letter and contacted Viking without the benefit of the FDCPA warning language that Viking then sent him FDCPA-compliant dunning notices and then began unquestionably treating the debt as in default.

38. The foregoing unfair and unconscionable conduct was not isolated or inadvertent. In federal litigation in jurisdictions across the country, Viking has been accused of improperly initiating debt-collection activities on behalf of car-rental companies months after purported damage to rental cars occurred. Indeed, Viking has even escaped FDCPA liability in prior car-rental damage litigation by claiming it was not acting as a debt collector because it had not acquired rental-car debt that was in default as the initial dunning letter was the first time the customer heard anything about the claim.

39. The dunning notices that Viking sent to Plaintiff were form letters generated in the regular course of Viking's business, pursuant to its policies and procedures.

40. Viking sent substantially similar form letters to other Class members and engaged in similar unfair and unconscionable debt collection practices with respect to other class members, in violation of the FDCPA.

41. As a result of Viking's violations of the FDCPA, Plaintiff and the Class are entitled to actual damages, statutory damages in the amount of $500,000 or 1 percent of

Viking's net worth, the costs of this action, reasonable attorneys' fees, and other appropriate relief.

## COUNT II
### Violation of the Fair Debt Collections Act
### 15 USC § 1692e
### Against Viking On Behalf of Plaintiff and the Class

1. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

2. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt [including] the character, amount, or legal status of any debt…" 15 U.S.C. § 1692e(2)(A).

3. It is false, deceptive or misleading for Defendants to attempt to collect debt for damage to a rental car many months after the damage purportedly occurred.

4. Specifically, Viking has misrepresented the character, amount and legal status of that debt in violation of the FDCPA.

5. As a result of Viking's violations of the FDCPA, Plaintiff and Class members are entitled to actual damages, statutory damages in the amount of $500,000 or 1 percent of Viking's net worth, the costs of this action, reasonable attorneys' fees, and other appropriate relief.

## COUNT III
### Violation of the Illinois Vehicle Code
### 625 ILCS 5/6-305.2
### Against Viking On Behalf of Plaintiff and The Illinois Subclass

6. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

7. The Illinois Vehicle Code states that:

> No rental company shall require any payment for damage to the rental vehicle, upon the renter's return of the vehicle in a damaged condition, until after the cost of the damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law.

625 ILCS 5/6-305.2.

8. Here, there was no agreement reached regarding the cost of the damage to vehicle or liability therefore between Plaintiff and Hertz, nor were those issues determined pursuant to law. Indeed, Plaintiff did not even damage the vehicle, and he learned of Hertz's claim only after Viking began dunning him three months after the rental.

9. By attempting to collect a debt before complying with the requirements of the Illinois Vehicle Code, Viking has misrepresented the character, amount and legal status of that debt in violation of the FDCPA.

10. The dunning notices that Viking sent to Plaintiff and Illinois Subclass members were form letters generated in the regular course of Viking's business, pursuant to its policies and procedures.

11. Viking sent substantially similar form letters to other Illinois Subclass members and engaged in similar unfair and unconscionable debt collection practices with respect to other class members, in violation of the FDCPA.

12. As a result of Viking's violations of the FDCPA, Plaintiff and the Illinois Subclass members are entitled to actual damages, statutory damages in the amount of $500,000 or 1 percent of Viking's net worth, the costs of this action, reasonable attorneys' fees, and other appropriate relief.

## COUNT IV
### Breach of the Covenant of Good Faith and Fair Dealing
### Against Hertz and on behalf of Plaintiff and the California Subclass and the Illinois Subclass Members

13.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

14.     To rent a car in San Francisco, Plaintiff entered into a contract with Hertz.

15.     That contract, like all contracts, contained an implied covenant and duty on the parties to act in good faith and deal fairly with one another.

16.     By waiting more than three months after the date of purported damage to its rental car to have its agent try to collect on that claim, Hertz breached that implied covenant and duty, acting contrary to the spirit and intention of its contract with renters.

17.     While there is no express provision in the contract that mandates what time frame in which Hertz must notify customers of damage claims, the issue relates to provisions in the contract to which the parties have agreed. More specifically, the contract anticipates that customers who decline Hertz's insurance will submit claims to their own insurance. By waiting more than three months to inform Plaintiff of even the existence of a damage claim against him, Hertz has frustrated Plaintiff's ability to address the claim under the terms of the contract – including the parties' intent to have the damage covered by Plaintiff's insurance.

18.     Because of Hertz's breach, Plaintiff and the California and Illinois Subclass members have been harmed, including by foregoing the right to timely challenge Hertz's damage determination and to timely submit months-old claims to their own insurance carriers.

## COUNT V
**Federal Declaratory Judgment Act**
**28 U.S.C. § 2201, *et seq.***
**Against Hertz and Viking on behalf of Plaintiff and The Class**

19.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

20.     The Federal Declaratory Judgment Act provides in relevant part:

> In a case of an actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief could be sought.

28 U.S.C. § 2201(a).

21. As set forth *supra*, there is a real and actual controversy between Plaintiff and Defendants regarding Viking's ongoing and unlawful attempts to collect debt on Hertz's behalf from Plaintiff. Defendants are trying to collect money from Plaintiff for damage to a rental car he did not cause and which he was not notified of until more than three months after it allegedly occurred. By waiting months to initiate collection on their purported damage claims, Defendants have prevented customers from timely contesting the claims with the original creditor, deprived customers who actually damaged rental cars of insurance coverage – and exponentially increased the likelihood of mistake and fraud.

22. The controversy between Plaintiff and Defendants is thus real and substantial and demands specific relief through a decree of a conclusive character.

23. Accordingly, Plaintiff seeks a declaratory judgment decreeing that Defendants may not attempt to collect debt stemming from damage to Hertz's rental cars where the first notice of the claim is furnished to customers more than 30 days after the date the alleged damage occurred.

## VII. JURY DEMAND

24. Plaintiff and members of the class request a jury trial.

## VIII. PRAYER FOR RELIEF

25. Plaintiff, for himself and for all members of the Class, respectfully requests that this Court:

    a) Certify the class as requested herein, appoint Plaintiff as Class Representative and his selection of counsel as Class Counsel, and order class-wide relief;

b) Adjudge and decree that Defendants have engaged in the conduct alleged herein;

c) Enjoin and restrain Defendants and their officers and agents from continuing or engaging in similar conduct as alleged herein;

d) Order that Defendants pay restitution to Plaintiff and the class which would restore Plaintiffs and the class to the financial position they would have been in absent Defendants' unlawful conduct;

e) Order that Defendants pay any statutory damages as a result of their unlawful conduct;

f) Order that Defendants pay any compensatory damages as a result of their unlawful conduct;

g) Order that Defendants pay punitive damages as a result of their unlawful conduct;

h) Order that Defendants pay interest on the monies wrongfully obtained from the date their unlawful practice began through the date of entry of judgment in this action;

i) Order Defendants to identify victims of their unlawful conduct;

j) Order that Defendants are financially responsible for notifying all members of the Cclass of the unlawful conduct set forth herein;

k) Award attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

l) Grant all other such relief as the Court deems necessary and proper.

Respectfully submitted,

Dated: January 11, 2019

By: */s/ Lori E. Andrus*
Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Leland H. Belew (SBN 293096)
Paul Laprairie (SBN 312956)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
Facismile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
leland.belew@andrusanderson.com

| | |
|---|---|
| 1 | paul.laprairie@andrusanderson.com |
| 2 | Clinton A. Krislov (*pro hac vice forthcoming*) |
| 3 | Christopher M. Hack (*pro hac vice forthcoming*)<br>KRISLOV & ASSOCIATES, LTD<br>20 North Wacker Drive, Suite 1300 |
| 4 | Chicago, Illinois  60606<br>Telephone: (312) 606-0500 |
| 5 | Facsimile: (312) 739-1098<br>clint@krislovlaw.com |
| 6 | chris@krislovlaw.com |
| 7 | *Attorneys for Plaintiff and the Proposed Class* |