James K. Schultz, Esq.
Sessions, Fishman, Nathan & Israel, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108
(619) 758-1891
jschultz@sessions.legal

Michael D. Alltmont, Esq. (admitted *pro hac vice*)
Bryan C. Shartle, Esq. (admitted *pro hac vice*)
Sessions, Fishman, Nathan & Israel
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002
(504) 846-7954
malltmont@sessions.legal

*Attorneys for Defendant Viking Client Services, LLC. dba Viking Billing Service*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., and MICHAEL G. FOX, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HERTZ CORPORATION and VIKING CLIENT SERVICES, INC., d/b/a VIKING BILLING SERVICE,<br><br>Defendants. | Case No. 4:19-cv-00210-YGR<br><br>**VIKING CLIENT SERVICES, LLC'S REPLY TO PLAINTIFFS' RESPONSIVE SEPARATE STATEMENT IN OPPOSITION TO VIKING CLIENT SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>CLASS ACTION<br><br>Hearing Date: April 14, 2020 (cancelled)<br>Hearing Time: 2:00 p.m.<br>Location: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

| Issue No. | Viking's Claimed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| Issues 2, 3, 4, 5, 6, 7 | Fact 1: Viking Billing Service provides billing services to Hertz.[1]<br><br>**Exh. A** – Bacon Tr., p. 27-28, ll. 21-8.<br><br>**Exh. B** – Hertz/Viking Billing Services Agreement<br><br>**Exh. C** – Viking Response to Interrogatory No. 1. | **Disputed**. Viking is a Collection Agency which purports to provide both billing and collection services to Hertz. Whether Viking was acting as a "debt collector" for purposes of the FDCPA is disputed.<br><br>Exh. 2, [Bacon Tr. pp. 27:19-28:19] ("We do billing services, and we do collection work as well.").<br><br>Viking's MSJ Exh. B [Hertz/Viking Collection Service Agreement][2] ("Viking Collection Services, Inc., a collection Agency, agrees to undertake collection of accounts placed by Hertz for the purpose of debt collection."). |
| Issues 2, 3, 4, 5, 6, 7 | Fact 2: Viking Billing Service's services concern accounts that are not delinquent and not in default.<br><br>*Id*. (to all Exhibits reference above) *see also* **Exh. A** – Bacon Tr., p. 85-86, ll. 22-3. | **Disputed**. Whether and when accounts become "delinquent" or in "default" are disputed material facts.<br><br>*See, e.g.,* Exh. 2 [Bacon Tr. p. 86:7-20] (Viking's objection that "recogniz[ing] a distinction between non-delinquent and not in default" requires a legal conclusion) |
| Issues 2, 3, 4, 5, 6, 7 | Fact 3: Viking Billing Service provides Hertz customers with their first notice of a loss concerning damage claims.<br><br>*Id*.<br>*See also* **Exh. A** – Bacon Tr., p. 66, ll. 16-23. | **Disputed**. In some instances Hertz customers receive the first notice of a damages claim when they return the vehicle at the end of the rental period, in other cases Hertz (or a different third-party collection agency) will "work the claim" before placing the account with Viking.<br><br>Exh. 2 [Bacon Tr. p. 78:6-14] (describing that a Vehicle Incident Report is created when a rental customer is still present when damage |

---

[1] The Hertz Corporation is the parent company of Thrifty and Dollar. Accordingly, the use of "Hertz" is used herein to mean Hertz, Dollar, or Thrifty.

[2] Viking refers to the title of its Exh. B as "Hertz/Viking Billing Services Agreement," but the document is actually titled "Collection Service Agreement."

| | | | |
|---|---|---|---|
| | | | is noted, versus "cases where the person is not available or walks away before they're able to identify the damage, there would be -- it's the same file, but they would call it the station report"); [Bacon Tr. p. 66:16-67:6] ("*For claims that have not yet been worked at Hertz*, they need a first notice of loss. … *In other cases* our client works some of their claims internally [or] they outsource to anyone else for some of those higher billing claims … go to a collection process") (emphasis added). |
| | Issues 2, 3, 4, 5, 6, 7 | Fact 4: The first notice of loss issued by Viking Billing Service advises the customer that Viking is partnering with Hertz "to assist in the processing of this claim." The letter includes a phone number to call "to discuss the claims process."<br><br>**Exh. D** – first notice of loss template.<br>**Exh. E** – first notice of loss sent to Fox. | Undisputed as to Plaintiff Fox.<br><br>**Disputed** as to Plaintiff DeNicolo. The first notice of loss issued to DeNicolo does not contain that verbiage. Rather, the first letter received by DeNicolo states that Viking "has been assigned a claim," extends an offer to "resolve your claim balance for 80%," and demands payment within 30 days so "your account will be considered settled…" Exh. 4 [5/29/18 DeNicolo letter] |
| | Issues 1, 2, 3, 7 | Fact 5: On February 8, 2018, plaintiff DeNicolo rented a car from Thrifty at the San Francisco airport.<br><br>Docket No. 82, Amended Complaint, ¶ 10. | Undisputed. |
| | Issues 1, 7 | Fact 6: The rental was related to an overnight business trip to meet a client. The rental was exclusively for business purposes.<br><br>**Exh. F** – DeNicolo Tr., pp. 22, ll. 17-18; pp. 27, ll. 5-8; pp. 32-33, ll. 21-1; p. 71, l. 12. | **Disputed**. Plaintiff DeNicolo traveled to San Francisco for a meeting. The car rental was an ordinary consumer transaction.<br><br>Exh. 8 [DeNicolo Tr. 28:2-32:13] |
| | Issues 1, 2, 3, 7 | Fact 7: Plaintiff DeNicolo returned the vehicle on February 9, 2018.<br><br>Docket No. 82, Amended Complaint, ¶ 10. | Undisputed. |
| | Issues 1, 7 | Fact 8: A Thrifty Incident Report | **Disputed**. The Vehicle Incident |

| | | | |
|---|---|---|---|
| | | dated February 10, 2018, reflects a damage incident date of February 9, 2018 and that the "customer doesn't speak English." The "type of rental" is listed as "business."<br><br>**Exh. G**. – Incident Report | Report is dated February 10, 2018 and lists "02-09-18" in the section labeled "Date & Time of Incident," but is also stamped "FEB 14 2018" twice and contains marks from two different color pens.  Further, the Vehicle Incident Report notes that it is a "station report" which indicates it was created when Plaintiff was not available.<br><br>Exh. 10 [DeNicolo Incident Report]<br><br>Exh. 2 [Bacon Tr. p. 78:6-14] (describing that a Vehicle Incident Report is created when a rental customer is still present when damage is noted, versus "cases |
| | Issues 2, 3, 7 | Fact 9: On March 1, 2018, just 21 days after the alleged damage incident, Hertz placed a damage claim in plaintiff DeNicolo's name with Viking Billing Service.<br><br>**Exh. H** – Bacon Decl., ¶ 2. | Undisputed. |
| | Issues 2, 3, 7 | Fact 10: On March 1, 2018, Viking Billing Service requested that its letter vendor, RevSpring, mail an initial notice of loss letter to plaintiff DeNicolo.<br><br>**Exh. H** – Bacon Decl., ¶ 3. | Undisputed. |
| | Issues 2, 3, 7 | Fact 11: On March 2, 2018, RevSpring flagged the file as having a bad address. The status of the account was updated to reflect the bad address. On March 5, 2018, Viking employee Timothy Wilson identified a good address and updated the account with that address, but due to a clerical error, the status code was not updated to reflect a new address. Accordingly, the first notice of loss was not mailed to plaintiff DeNicolo. | **Disputed** due to a lack of foundation. The accuracy of Viking's records is, by Viking's own admission, tainted with "clerical errors." Viking has not conclusively established *why* Viking's first dunning notice was not sent to Plaintiff DeNicolo until May 29, 2018. |

- 4 –
Viking's Reply to Plaintiffs' Responsive Separate Statement
in Opposition to Viking's Motion for Summary Judgment

| | | | |
|---|---|---|---|
| | | **Exh. H** – Bacon Decl., ¶¶ 6-11 | |
| | Issues 2, 3, 7 | Fact 12: Had there not been a clerical error, and consistent with Viking's standard practice, the first notice of loss to plaintiff DeNicolo would have been issued on or about March 6, 2018.<br><br>**Exh. H** – Bacon Decl., ¶ 12. | **Disputed**. Viking has identified more than 30,000 occasions when it sent the first notice of loss to Hertz customers more than 30 days after the date of purported damage. There are material questions of fact as to Viking's "standard practice." Nor has Viking conclusively established that its first dunning letter to Plaintiff DeNicolo "would have been issued" any sooner than May 29, 2018, absent a "clerical error."<br><br>Exhs. 17 [Viking's Consolidated Responses and Third Supplements to Plaintiff's Special Interrogatories, no. 7] |
| | Issues 2, 3, 7 | Fact 13: Despite the clerical error concerning the first notice of loss, Viking attempted to contact plaintiff DeNicolo by telephone and within 30 days of the damage claim incident.<br><br>**Exh. H** – Bacon Decl., ¶ 13. | **Disputed** with respect to Viking's assertion of a "clerical error"; Viking has not conclusively established *why* Viking's first dunning notice was not sent to Plaintiff DeNicolo until May 29, 2018.<br><br>Otherwise undisputed. |
| | Issues 2, 3, 7 | Fact 14: On March 5, 2018, Mr. Wilson placed a call to plaintiff DeNicolo.<br><br>**Exh. H** – Bacon Decl., ¶ 13.<br><br>**Exh. F** – DeNicolo Tr., pp. 47-48, ll. 11-25.<br><br>**Exh. I** – Recording of 3/5/18 call<br><br>**Ex. J** – DeNicolo Discovery Responses to Requests for Admissions Nos. 21-22. | Undisputed. |
| | Issues 2, 3, 7 | Fact 15: Plaintiff DeNicolo answered the call. Mr. Wilson asked if "Ronald DeNicolo, Jr." was available. Plaintiff DeNicolo claimed he did not speak English and the call terminated. | Undisputed. |

| | | | |
|---|---|---|---|
| 1 | | *Id*. | |
| 2 | Issues 2, 3, 7 | Fact 16: Plaintiff DeNicolo is fluent in English. | Undisputed. |
| 3 | | | |
| 4 | | All portions of **Exh. F** (DeNicolo Transcript) attached. | |
| 5 | Issues 2, 3, 7 | Fact 17: On March 30, 2018, Viking tried calling plaintiff DeNicolo again, but there was no answer.<br><br>**Exh. H** – Bacon Decl., ¶ 13. | **Disputed** due to a lack of foundation. The accuracy of Viking's records is, by Viking's own admission, tainted with "clerical errors." Viking therefore has not conclusively established the dates of its unsuccessful communication attempts based solely on the Bacon Declaration. |
| 10 | Issues 2, 3, 7 | Fact 18: On April 3, 2018, Viking contacted plaintiff DeNicolo a second time. The following is a recitation of the entire call:<br>Plaintiff:    This is Ron.<br>Viking:       Hello.<br>Plaintiff:    Yeah. Who this?<br>Viking:       Hi, my name is Terry First. I'm calling on a recorded line. I'm calling for Ronald DeNicolo.<br>Plaintiff:    Wrong number. Wrong number.<br><br>The call was not placed to a wrong number.<br><br>**Exh. H** – Bacon Decl., ¶ 13.<br><br>**Exh. F** – DeNicolo Tr., pp. 52-53, ll. 18-14.<br><br>**Exh. K** – Recording of 4/3/18 call | Undisputed. |
| 23 | Issues 1, 2, 3, 7 | Fact 19: On June 6, 2018, Viking received an inbound call from plaintiff DeNicolo, who claimed he did not damage the vehicle. The representative immediately offered to email plaintiff the documentation supporting the damage claim. After taking plaintiff's email address, the Viking representative advised plaintiff DeNicolo that he provided the | Undisputed. |

| | | | |
|---|---|---|---|
| | | documents and the contact information for the Viking representative handling the damage claim, Terry First.<br><br>**Exh. F** – DeNicolo Tr. pp. 69-74, ll. 22-19.<br><br>**Exh. L** – Recording of 6/6/18 first call | |
| | Issues 2, 3, 7 | Fact 20: Just 40 minutes later, plaintiff called Viking after receiving the documents and asked for Terry First. Mr. First was not available, and the Viking representative advised he would have Mr. First call plaintiff first thing the next morning.<br><br>**Exh. F** – DeNicolo Tr. pp. 84-86, ll. 6-23.<br><br>**Exh. M** – Recording of 6/6/18 second call | Undisputed. |
| | Issues 2, 3, 7 | Fact 21: On June 7, 2018, at 8:50 a.m., Mr. First returned plaintiff DeNicolo's call.  Plaintiff advised he had an attorney but refused to provide the attorney's name or contact information.<br><br>**Exh. F** – DeNicolo Tr. pp. 88-90, ll. 8-2.<br><br>**Exh. N** – Recording of 6/7/18 call | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 22: On April 2, 2019, plaintiff Fox returned a rental car to Hertz.<br><br>**Exh. O** – Fox Tr. p. 39, ll. 4-6. | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 23: On April 2, 2019, Hertz identified damage to the vehicle.<br><br>**Ex. E** – Fox Letter<br><br>**Ex. P** – Incident Report - Fox | **Disputed**.  The Vehicle Incident Report submitted as Viking's Exhibit P to its Motion for Summary Judgment identifies "Today's Date" as "04022019" (presumably, April 2, 2019), but the section labeled "Date and Time of Incident" is blank.<br><br>Exh. P [Fox Incident Report] |
| | Issues 4, 5, 6, | Fact 24: Twenty days later, on April | **Disputed**.  Fox received a letter from |

| | | | |
|---|---|---|---|
| 7 | | 22, 2019, Hertz forwarded a damage claim to Viking Billing Service and on April 23, 2019, Viking mailed plaintiff Fox a first notice of loss.<br><br>**Ex. E** – Fox Letter | Viking dated April 23, 2019 but the letter does not state when Hertz forwarded the claim to Viking, nor has Viking otherwise established when Hertz placed its claim with respect to Plaintiff Fox with Viking<br><br>Exh. 13 [Fox letter] |
| | Issues 4, 5, 6, 7 | Fact 25: The April 23 first notice of loss was the first plaintiff Fox learned of a damage claim, including the amount of the claim.<br><br>**Ex. E** – Fox Letter<br><br>**Exh. O** – Fox Tr., p. 40, ll. 1-24. | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 26: The April 23 first notice included a phone number to call "to discuss the claim process."<br><br>**Ex. E** – Fox Letter | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 27: On May 2, 2019, plaintiff Fox called Viking and left a message.<br><br>**Exh. O** – Fox Tr., p. 47-48, ll. 4—6. | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 28: On May 3, 2019, Viking Billing Service representative R. Foley returned plaintiff Fox's call.<br><br>**Exh. O** – Fox Tr. pp. 48-49, ll. 20-17.<br><br>**Exh. Q** – 5/3/19 Recording | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 29: The two spoke for approximately 10 minutes.<br><br>*Id*. | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 30: Plaintiff Fox felt the Viking Billing Service representative Foley was professional and was not rude.<br><br>**Exh. O** – Fox Tr. pp. 62-63, ll. 14-3 | Undisputed. |
| | Issues 4, 5, 6, 7 | Fact 31: Representative Foley immediately addressed plaintiff Fox's dispute of the damage claim. She did not demand he pay the damage claim.<br><br>**Exh. Q** – 5/3/19 Recording | Undisputed. |

- 8 –
Viking's Reply to Plaintiffs' Responsive Separate Statement
in Opposition to Viking's Motion for Summary Judgment

| | | |
|---|---|---|
| Issues 4, 5, 6, 7 | Fact 32: When plaintiff Fox advised he had pictures proving he returned the car in the same condition he had found it, representative Foley asked him to send her the pictures so she could review and, if everything matched up, Viking would close the file.<br><br>**Exh. Q** – 5/3/19 Recording | Undisputed. |
| Issues 4, 5, 6, 7 | Fact 33: Viking representative Foley told plaintiff Fox, "if it's not yours, I don't want you to pay it."<br><br>**Exh. Q** – 5/3/19 Recording | Undisputed. |
| Issues 4, 5, 6, 7 | Fact 34: Within two weeks of the call (mid May 2019), plaintiff Fox received confirmation that the damage claim had been closed.<br><br>**Exh. O** – Fox Tr. pp. 56, ll. 7-19; pp. 63-64, ll. 21-4. | Undisputed. |
| **PLAINTIFFS' ADDITIONAL MATERIAL FACTS** | | |
| | Fact 35: Viking treats debts assigned by Hertz in a uniform manner, regardless of whether the underlying rental was made for "business" or "personal" reasons.<br><br>**Exh. 2** - Bacon Tr. 115:2-116:20 | Undisputed. |
| | Fact 36: When it is assigned an account for collections, Viking does not make it a practice to determine from Hertz or the renter the purpose for which the rental was made.<br><br>**Exh. 2** - Bacon Tr. 116:8-116:13 | Disputed. The Fact, as stated, mischaracterizes the cited testimony. |
| | Fact 37: Plaintiff DeNicolo's alleged debt as claimed by Hertz was due and owing immediately upon Hertz's receipt of an invoice regarding the same.<br><br>**Exh. 15** - Rental Jacket, p. 3. | Disputed. The Fact, as stated, does not accurately reflect the provision in the Rental Jacket. The provision makes a damage claim payable upon invoice to the customer, not upon Hertz's receipt of an invoice. Plaintiffs' reading of the provision as allowing Hertz to immediately collect the damage claim without first notifying the customer is inconsistent |

| | | |
|---|---|---|
| | | with the language of the Rental Jacket, inconsistent with Hertz's practice, wherein it invoices the customer rather than immediately bill the customer's credit card on file (which plaintiffs' reading would allow), is strangely anti-consumer and self-sabotaging, and a violation of state law. |
| | Fact 38: Defendant Viking has performed debt-collection activities for approximately 50 years.<br><br>**Exh. 1** - Johnson Tr. 20:11-21:21, 39:2-7 | Undisputed. |
| | Fact 39: Defendant Viking has performed debt-collection activities for Defendant Hertz since at least 2008.<br><br>**Exh. 1** - Johnson Tr. 47:5-6, 130:1-17 | Undisputed. |
| | Fact 40: Defendant Viking's process for performing "billing" services for Defendant Hertz involves the same procedures as its performance of "collection" services for Defendant Hertz.<br><br>**Exh. 2** - Bacon Tr. 29:5-8, 91:16-94:10 | Disputed. The Fact, as stated, mischaracterizes the testimony. Viking Billing Services issue the first notice of loss to renters for damages claims. Moreover, claims within billing services are subject to different letters, agents, managers, talk-offs, and authentications than those within collection services.<br><br>**Exh. 2** - Bacon Tr. 28: 2-22. |
| | Fact 41: Accounts that Hertz places with Viking for "billing" services automatically "roll-over" to "collection" services 91-105 days after placement, so long as the claim has not been resolved, recalled, or otherwise excluded from collections during that time.<br><br>**Exh. 2** - Bacon Tr. 143:3-9, 210:10-211:18 | Disputed as stated in that the exclusion within the first 91-105 is from billing services. If there are no exclusions from billing services, then the account will roll over to collections. |
| | Fact 42: A Viking agent called Plaintiff DeNicolo on April 18, 2018, and spoke to Plaintiff DeNicolo. | Undisputed. |

- 10 –
Viking's Reply to Plaintiffs' Responsive Separate Statement
in Opposition to Viking's Motion for Summary Judgment

| | | |
|---|---|---|
| | **Exh. 8** - DeNicolo Tr. 55:9-56:10 | |
| | Fact 43: During calls placed by Defendant Viking to Plaintiff DeNicolo on March 5, March 20, and April 3, 2018, Viking's agent did not disclose that he was a Viking employee, that Viking was acting on behalf of Hertz, Dollar, or Thrifty rental brands, nor that Hertz was claiming that Plaintiff DeNicolo owed money relating to his vehicle rental in February 2018.<br><br>**Exh. 8** - DeNicolo Tr. 47:11-48:10, 52:14-53:8 | Undisputed. However, plaintiff DeNicolo admits that he lied to Viking during the March 5 and April 3 call, falsely claiming not to speak English during the first call and telling Viking they had the wrong number during the latter call. There was no answer on the March 20 call (**Exh. H** – Bacon Decl. ¶ 13). When placing calls, Viking first verifies a right party contact with the renter to make sure they are talking with the right person before giving out all the information to make sure they are not giving out the renter's personal information to the wrong person.<br><br>**Exh. R** - Bacon Tr. 178:7-12. |
| | Fact 44: During a call on April 18, 2018, the Viking agent did not disclose that he was a Viking employee nor that he was seeking to collect a debt on behalf of Hertz.<br><br>**Exh. 8** - DeNicolo Tr. 55:9-57:20 | Undisputed. However, when placing calls, Viking first verifies a right party contact with the renter to make sure they are talking with the right person before giving out all the information to make sure they are not giving out the renter's personal information to the wrong person.<br><br>**Exh. R** - Bacon Tr. 178:7-12. |
| | Fact 45: Viking has identified more than 30,000 accounts placed by Hertz for collection of alleged damages, which accounts were not sent an initial dunning letter until more than 30 days after the alleged date of loss.<br><br>**Exh. 17** - Viking's Supplemental and Second Supplemental Response to Plaintiffs' special interrogatory no. 7 | Disputed as stated in that the accounts were placed for billing, not collection. Furthermore, Viking mailed the first notice of loss within 7 days of placement for 99.8% of all placements from Hertz.<br><br>**Exh. 17** - Viking's Supplemental and Second Supplemental Response to Plaintiffs' special interrogatory no. 8 |
| | Fact 46: Plaintiff Fox would not have rented a vehicle from Hertz if he had known that he would have been assessed improper charges and subjected to illegal debt collection practices.<br><br>**Exh. 14** - Fox Tr. 73:2-8, | Disputed. The Fact as stated misrepresents the testimony cited. In fact, Mr. Fox testified he has rented a car from Hertz subsequent to the time he was contacted about the damage claim in April, 2019. Additionally, Plaintiff Fox admitted that Viking never caused him "to suffer any out- |

| | | |
|---|---|---|
| | | of-pocket monetary damages." Plaintiff Fox states that he is entitled to statutory damages, injunctive relief, and attorney's fees, but does not state that he is entitled to actual damages.<br><br>**Exh. 14** – Fox Tr. 73:9-11.<br><br>**Exh. S** - Fox Response to Request for Admissions Nos. 1 and 2; Response to Interrogatory No. 16. |
| . | Fact 47: Plaintiff Fox suffered injury through Defendants' attempt to collect a debt that was not owed.<br><br>**Exh. 14** - Fox Tr. 74:4-23 | Disputed. Plaintiff Fox admits that Viking never caused him "to suffer any out-of-pocket monetary damages." Plaintiff Fox states that he is entitled to statutory damages, injunctive relief, and attorney's fees, but does not state that he is entitled to actual damages.<br><br>**Exh. S** - Fox Response to Request for Admissions Nos. 1 and 2; Response to Interrogatory No. 16. |

## DEFENDANT VIKING'S ATTORNEY ATTESTATION

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

Dated:  3/25/2020                           SESSIONS FISHMAN, NATHAN & ISRAEL, L.L.P.
                                            */s/James K. Schultz*
                                            James K. Schultz
                                            *Attorney for Defendant Viking Client Services, LLC.*
                                            *dba Viking Billing Service*